May it please the Court, my name is Tim Casey, I represent the Plaintiff Appellant a la Josephine Rosenfield. I'd like to reserve three minutes for rebuttal. I understand the Court may fashion this differently, the issue before it, but I respectfully submit that the issue really before this Court is whether this Circuit is going to adopt the McKenzie rule for HR managers in the FSLA context. Now whether we call it the management, the manager exception, or the manager rule, we respectfully submit to you that that rule is inconsistent with what this Court has already decided, and what the Supreme Court has decided and casted. What McKenzie does, contrary respectfully to the FLSA, the FLSA, as this Court understands, is a remedial statute. It's intended to be broadly construed in order to effectuate its purposes. Its purposes, plainly, are to make certain that there is compliance with the wage and hour laws of employees. And the Congress ---- Well, this is fine in generalities, but you have to have a complaint. I mean, the statute is quite specific. There are three things, three or four things. Most of them are not implicated here. But for purpose of our case, it has to be an actual complaint filed. There has to be retaliation for the complaint. Yes. The problem when it comes to managers is there are all sorts of things that managers do, may do on behalf of lower-level employees. They may just amount to advocacy or may just involve a sort of policy discussion, saying, you know, this is what we should do, rather than saying, look, I'm complaining that this is not being done. And I think that's the theory behind the manager rule, is that managers should be entitled to speak and not have everything that they say that might be advocatorial or that might be policy-oriented be treated as a complaint. It immediately kicks in the protection of that, so to say. So, you know, it makes a certain amount of sense. Judge Kozetsky, I agree with you. It does. And in this context, without addressing the facts of AJ, which is how she's referred to, Ms. Rosenfield, if you look at the Lambert decision, and the key thing is compliance, is how do we comply with two ---- regardless of job description, regardless of duties, made sure that there was compliance. That was a congressional public policy decision. And in order to make sure that that is done, they had under Section 29 U.S.C. 215A3 an anti-retaliation provision that makes sure that no employee has to face economic retaliation for achieving that congressional purpose. So an answer to Judge Kozetsky's question is how do we try to make sure that it goes something beyond and it's not just what the Fifth Circuit discussed in Hagan was an intra-company dispute. But what I want to do is look at Lambert for a minute, which is obviously from this Court. Section 215 is designed to ensure that employees are not compelled to risk their jobs in order to assert their rights. Williamson, that decision, comports with that. Okay. I'm sorry. Is that all you get out of Lambert? I'm sorry, Your Honor. Is that all you get out of Lambert, is a random quote? No, no. But it's important because one of the things is, is that economic retaliation is, is the, is the main, is the main thwart of that particular provision is to prevent economic retaliation so an employee doesn't have to put it online. McKenzie, as it's been adopted not only in that circuit, the Tenth Circuit, but the other ones, basically requires two additional requirements for an H.R. manager. One, step outside of the role of the H.R. and then take a position adversarial to the company. That's directly contrary to Lambert. Was Lambert the manager? The manager in ---- Was Lambert the manager? Lambert, Lambert was not, this was not a management case. It was not an H.R. manager. So, so we don't really have a case dealing with management. No, this is a first impression case. And the rationale of the courts that have gone that way is that managers are different, because otherwise everything a manager says becomes subject, you know, you can never fire a manager because they're always sort of speaking policy, and you can never discipline because everything they do that sounds like, you know, a policy position becomes a claim, which then becomes subject to the protections, anti-retaliation protections. Managers do sometimes get fired for cause, you know, for good cause, or disciplined. It's a lit ---- I grant you, Your Honor, it is a legitimate concern. But the concern that ought to be adopted by this Court is in the benefit of the employees. Well, it's also true that under any statute, retaliation of any employee, they can always all be fired for cause. It's only a question of whether there's a triable issue of fact as to whether cause, just cause was the reason or something else was the reason. Yes, and I think the main problem ---- Well, but that just puts everything, makes everything a lawsuit. No. If a manager says anything that advocates, you know, that favors employees, then anything that happens afterwards becomes a lawsuit as to whether that was retaliation for taking that position. The statute talks about the claim, doesn't it? It does. And, Your Honor, I ---- And there was nothing like that here, was there? No, I respectfully disagree on two fronts. I respectfully submit that we do have claims that were submitted. We have eight separate claims, but specifically I would address the Court to three different complaints, actually four different complaints. The first complaint was done by the company that's at ER 112, where A.J. was told to, quote, back off of her FLSA grievances. I'm sorry. And what exactly did she do? I'm sorry. At what ER, what? It's ER 112. It's ER also ER 114. And basically there was the first time that she raised the complaint. Where on 112? Your Honor, I have it in a paragraph 25, which I believe would have been our statement of facts. 25 starts on 112. Yes. I think it's at the bottom and then it continues on to the next page, Your Honor. Okay. And what's ---- where does it talk about a claim? Back off on her complaint about the company's compliance, using the term complaint. Is that what you're relying on? Yes. That was the first instance in which if you have to go a step beyond, outside of the role, and get adversarial, if that's the McKenzie rule this Court adopts, she did that. Well, there's an issue of fact that leads to this. And precisely that is underlying most of our argument is the district court, we believe, made a determination that, well, he determined there were no undisputed facts. We believe it is a tribal issue of fact that should be brought to the jury. I mean, she says there's a reference to a complaint, but is it an actual complaint? I mean, this is, say, back of her complaint. Is there something she filed? No. Some piece of paper? Is there something where ---- It's an oral statement and the complaint is used. That's the language of counsel. She quotes somebody else as saying, back off your complaint. She comes in and she tells her immediate supervisor, upper management, I forget the fellow's name at this particular time, Verbin, Matt Verbin, the company is not in compliance with FLSA. You're having people work off the clock, you're doing this, et cetera. She raises that complaint and he tells her she has to back off of this. This is not being received by management. And then in ER 114, it goes a step beyond that. She is then told that she has to rehabilitate her professional standing in the company. I understand that's what she says he says, but what is it that the actual complaint is? I mean, he refers to something. What is the actual physical thing that she did that you say amounts to a complaint? She puts them on notice. No, no. Where is it in the record? Your Honor, I don't know if I have that prepared right now for my brief in there. You have the complaint? I do have. I have the entire excerpt of the record. Well, grab it. You must not be afraid to touch the record, you know. You can take the lectern, even. It will help. ER 104, she goes to Mark. 104? Yes. ER 104. Okay. What? Let me get there. Paragraph 10. I believe it is. I don't have the particular. I just have the site to the ER. Plaintiff made her first. So you have the complaint in front of you, right? Pardon me? You have the complaint in front of you? I have this, and I have the record here. Well, look at the complaint. You know, you're giving us a site of the complaint, Lynch. Why don't you look at it and tell us what it is you're talking about? This is actually in the statement of facts, not the complaint. Yeah, this would be the statement of facts. Okay, where in the record is it? Where in the ER? That's what I'm looking for, Your Honor. I'm looking at ER 104, paragraph 10, where we discuss the eight direct oral complaints. Lines, lines. And what I'm looking for specifically, I believe it's at lines 14 and 15. Between May and July of 2010, she made her first FLSA complaint to Global Trans Management to Mark Erickson and her direct report manager, Matthew Verbin. And what she said there, and there was nothing particularly magical about it, but what she did is she says that you are not in FLSA compliance, that you are, in my words, that you are cheating employees out of wages, and that is when she is told you have to back off and you have to rehabilitate. Now, under the Lambert decision, Your Honor, the case says so long as an employer communicates the substance of the allegations to the employer, he or she is protected by 215A3. The Kasten Supreme Court decision says at page 1334, if the recipient has been given fair notice that a grievance has been lodged and does or should reasonably understand the matter as part of the business concern, there's protection. And so what we argue here is as soon as she raises it under Kasten and under Lambert, that is a complaint. And if we adopt the McKenzie rule — So these things, the bullet points under 10 are the complaints? Yes, sir. And quite frankly, what I would respectfully submit to the Court, the strongest arguments, if you adopt the McKenzie argument, of hostility or adversity is the first complaint at ER 112, the sixth complaint on December 3, 2010, which is ER 114 and 116, and the seventh complaint, which is in March of 11 — What were those numbers? Which were the numbers? The seventh? The seventh complaint would be ER 11 — Just give me the numbers. Which numbers? 111 and 112. No, the complaint numbers. Oh, I'm sorry. Complaint number one, complaint number six. First complaint, sixth complaint, and the seventh complaint. Those things, Your Honor, we respectfully submit to you. Okay. First — Yes. Sixth and seventh? Yes, sir. Those are the strongest points? Those are the strongest points under McKenzie. While we ask opposing counsel — Yes, thank you, Your Honor. You've got about a minute left. Do you want to save it for rebuttal? Thank you, Your Honor. Okay. May it please the Court, Danita James here on behalf of Global Trans Enterprises and the two individual defendants in this case. If you want me to jump right to those — Jump right to it. Three complaints. Could I ask you, if it's all right with Judge Kaczynski, I want to backtrack a little bit, because what we've been talking about last is even if we adopt the McKenzie rule, there are issues of fact. But I'd like to backtrack on whether the McKenzie rule is correct or not. And specifically, I'd appreciate your addressing the question whether it is consistent with our decision in McKowiak under the Energy Reorganization Act. Well, let me start with the McKowiak case, since that's what you asked me about last. That is a really special kind of statute, where the person in question there was basically in a quality control position. Everything he did was to make sure that the energy process was going right. There were — it was a nuclear — I believe a nuclear plant kind of thing. And so the language in that statute was not the language of the FLSA. It was not filed any complaint. And this Court determined that basically anything he did was protected activity because of the unique nature of his role in ensuring the safety of this nuclear energy process. And his job had — I mean, he was a — his employer set his job duties, but also the statute set his job duties. And it said he was required to have full and unfettered access and reporting. But he did that in interpreting a statute that seemed even more tethered to proceedings under — you know, before the Nuclear Regulatory Commission. And yet we said, well, we can't fulfill the purpose of it if we go literally with the statute. And it just — it seemed parallel to me, at least, on first read. Well, I think if you look closely, it does not use the filed any complaint language and really does create sort of this special dual employee who has both regulatory duties and duties to the employer. And I think that's what really makes that sort of a sui generis type of statute. I would like to talk a little bit about why the McKenzie rule, the manager rule — Well, okay, you've — — fits with — well, I understood — Sorry, you're still answering Judge Grebe's question. It's perfectly fine. I thought — My question was not premised on the McKenzie rule, but that's fine. My apologies. No, no. It's okay. I mean, I'm interested in both questions. So if you're still answering Judge Grebe's questions, that's perfectly fine, because I want to hear that answer, too. But at some point, I'd like you to get back. My view is that you need the complaint regardless of the status of an employee, and I want you to focus on these things and tell me whether they are complaints or not. But I'm quite interested in the McKenzie rule, so go right ahead and speak to that. Okay. Well, and I was moving away from this Court's decision in the Mackieu case. Right, right. Just let me ask you two questions. Yes. A more general question and a specific question, and you answered the McKenzie question, and now you're moving on to the more general question of McKenzie, which is great. I'm sorry. Okay. Go right ahead. So I think that the place you have to start is the Kasten case. The U.S. Supreme Court interpreted the filed any complaint language of the FLSA in 2011. So it wasn't a manager case, but I think what the Supreme Court said in that case is very pertinent to how this Court construes that language in the context of a manager. And we, you know, in our briefs, we were focusing on particular language, but I wanted to call the Court's attention to some other language from McKenzie. I got sidetracked on the complaint, so give me one minute here. I'm sorry. What language from Kasten? Well, Kasten does say that the phrase any complaint suggests a broad interpretation. It says that at page 1332. And there's also a phrase in the statute that prohibits retaliation or discrimination against any employee. And wouldn't that also have to have a broad interpretation? Yes, Your Honor. And I think all of the manager rule cases acknowledge that they are applying a broad interpretation to Section 215A.3, but there still has to be a complaint. And the language I wanted to call to your attention from Kasten is actually on page 1335 of that decision. To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand, in light of both the content and the context, an assertion of rights protected by the statute and a call for its protection. So I think that is important language because when you're deciding if something is a complaint, you've got to look at the content and you've got to look at the context, and it's got to be asserting rights under the statute adverse to the employer. And that is what we don't have here. And Kasten is also very clear that there has to be fair notice to the employer. And so you also look at the complaint and say, is this putting the employer on notice that a manager is making a complaint that could support a future retaliation claim against the company? And that's what we don't have here. Now, there's a couple of published decisions from other circuits applying Kasten. They are not in the manager context and they're not cited in the briefs, but I do think that they give a further gloss to what the Supreme Court meant in Kasten that this Court should be interested in. One of them is Montgomery v. Havner from the Eighth Circuit. Are these cited in 28J letters or anything like that? No, and I can submit one after the argument or I can give it to you. I'd appreciate that rather than having us write. Okay. I mean, you can talk about it, but. Okay. So the Montgomery v. Havner case from the Eighth Circuit involved a law firm, a small law firm, and a paralegal who she stopped working about 4.45 one afternoon. The office manager, wife of the lawyer in the small law firm, saw her there, that she'd stopped working. She told all of the employees to go ahead and leave, I'll clock you out. And the paralegal found out that the office manager had clocked her out 10 minutes before she'd clocked out the other people, and she called her. And they had this telephone conversation. They explained their positions. The office manager said, okay, I'll correct that. I'll give you the 10 minutes. Then there was a second phone call about something entirely different that became very heated, and the paralegal got fired. And the Eighth Circuit affirmed the summary judgment in that case, relying on Kasten saying that no reasonable jury could find that telephone call, which was about the wage and hour issues, to be sufficiently clear and detailed to understand that the plaintiff was making an FLSA complaint. In the Tenth Circuit applied Kasten actually in a Title VII case, but the complaint at issue there was a Facebook post. And what I think is really interesting about the Tenth Circuit case is it reads Kasten to say to file an informal complaint with your employer, you've got to use the informal grievance procedures that your employer has set up. And if you're in the Tenth Circuit reads Kasten to say an informal complaint to an employer that is outside the grievance procedures, like a Facebook post, is not sufficiently clear and detailed to give the employer fair notice under Kasten. Well, which I hope brings us to the question I asked. Okay. So let's look at the three. Which is to address the three. The three that Mr. Casey says are the three. There are more, but I think since Mr. Casey picked these as the most telling, why don't we focus on those? And so Mr. Casey is pointing back to his statement of facts at the summary judgment stage in the district court. And what I would urge this Court to do is look at the real evidence and not counsel's statement of it. The evidence in this case is very limited. It's one interrogatory answer, a few documents that undisputedly are what the plaintiff is referring to in the interrogatory answer, her own affidavit, and an affidavit from her manager, which actually is not even material and the district court didn't rely on it in reaching summary judgment. So the first complaint was, and let me see, the interrogatory answers are in the record a couple of times. Yes. They start at page 127 and they're extremely specifically couched about Fair Labor Standards Act. There's nothing vague about, you know, well, gee, I guess I ought to get ten more minutes, which is what you were describing the Montgomery case as. And they're described by her as having been, these employees in Prescott or wherever it was are not, are misclassified under the Fair Labor Standards Act and, you know, it's clearly an FLSA problem that she's bringing to the attention of management. And there's no doubt about that in all of her communications with the managers, but just being, invoking the FLSA does not turn it into a complaint. What is key is that in all of her communications with her fellow managers, she is talking about what the company needs to do to avoid liability, to comply with the law, to bring it into compliance with the FLSA. It only becomes a, you don't think Congress intended to protect an employee for, who's doing that, from being fired for that reason, not for not coming to work or drinking on the job or some other problem, but don't you think that congressional intent when they talk about any employee would protect a person who did this? I, you know, congressional intent, I think, would encourage managers to engage in full and open debate, to get advice and to work towards. And not be punished for doing it, right? Well, you're skipping ahead to another element of her claim that was not at issue at all in the summary judgment record. The issue is whether she engaged in protected activity. It was a summary judgment motion very early in the case, before a discovery was completed. That's why it's based on an interrogatory answer that she wrote with the assistance of counsel. And we are not to the causation or the adverse employment action. And so you're to the question of whether in general an employee in this situation is intended to be protected by the statute at all, which is the issue that you have raised in this case. And I'm asking you about congressional intent in that context. Well, all, I mean, McKenzie and all of the other circuits that have considered this under the FLSA have determined that that was not Congress's intent, that Congress had no intent to protect intra-management communications about getting to the point of compliance, that they intended to protect only complaints that gave the employer fair notice that you were doing something against the company. And it is abundantly Does it matter at all that her, I forget whether it's the interrogatories or somewhere else, that she asserts that it was actually not the main part of her job to be dealing with FLSA compliance, so that in a sense she was stepping outside her normal duties to do this? That's not how I believe the step outside her role should be construed. It's step outside the role of the manager acting in the interest of the company versus doing something that is against the company, like calling the Department of Labor or threatening to call the Department of Labor. I thought there was, there were cases, though, saying that internal complaints do suffice. If they are complaints, but if they are Right, but you just said in answer to my other question that no, no, stepping outside your role requires you to be calling somebody outside the company, that's Oh, no, or threatening to call the Department of Labor or telling the employees they should hire a lawyer or, you know, telling the employees, oh, you should sue us because you'd win. Those are kinds of things that are against Doesn't that create a perverse incentive? Because what you're saying is that a manager who sees an alleged violation who comes to hire management and says, I see an alleged violation here and I would really appreciate it if the company would fix that, they can be fired for that reason under your theory. But if they then say, and another thing, I'm going to call in, you know, the feds, I mean, doesn't that actually reduce the opportunity to obtain compliance? If you go back to Kasten, Kasten says it has to be a clear, detailed complaint, an assertion of rights, a call for their protection. And what the sort of theory that Mr. Casey is advocating, what I believe you're saying is that managers should have extra protection. They don't even have to file a complaint. They just have to mention the violation, but an employee has to actually do something that's not, you know, hey, what about this? Isn't there some overtime obligation? They have to file a complaint. But they can do that internally. They can call the same manager that this person called and say, I'm not getting overtime and I'm entitled to it, and here are the dates, and I invoke the FLSA. That's sufficient under the case law to protect that employee. But if this person did the same thing and got fired for it, she's not protected. That's your position. The manager, if she's acting in the interest of protecting the company from liability, then she hasn't communicated a complaint to the company. That's my position. And I would ask this Court to adopt the manager rule. I'm still waiting for an answer to my question. I asked you about the three complaints and you got sort of boxed up in interrogatories. What I'd like you to tell me is what do these three incidents relate to in the real world? Regardless of my red light? Please, don't waste time here. Okay. So the first one was, what happened was she spoke to the manager of the call center and said, hey, these people need to be recharacterized as hourly employees because their phone reps. That is what she identified as the first complaint. The sixth complaint is the, I believe Mr. Casey said, was December 3rd, 2011, communication. And so in the interrogatory answer, that is ER 192. And that, this is the meeting she is having with the president of the company, going through each of the positions in the company, talking about whether they should be characterized as exempt or nonexempt. And I believe this is the one where her, the president says, good job, after they've completed that rundown of all the different positions in the company and talked about the principles of the FLSA and whether they should be exempt or nonexempt. And I believe that the seventh complaint that Mr. Casey mentioned is, I think he said March 9th, after, under her guidance, the company had recharacterized a number of employees as they had been treating as nonexempt, and, you know, they just completed this, and her manager asked her if she was going to be checking up on the other managers to see if they were making sure their employees were completely relieved from work during lunch breaks. Okay. Thank you. You have about a minute left for rebuttal. You have a little more than a minute. Yes, Your Honor, and I will be brief. I'm going to go right to your question, Judge Kaczynski. The seventh complaint was her being told by her immediate supervisor, you will not follow up on whether or not there's been FLSA compliance. She's been instructed. Nonetheless, it may I'm sorry. A complaint is something she does. Yes. The reaction to it, but the question is, what did she do that in your view amounts to a complaint? She ignores the order, and what she does in early May is she can We're not talking about number seven. Well, we're talking about seven and eight under ER1 I'm just trying to figure out. You said seven. I just want to be sure. Yes, it's the seventh complaint, because none of them can be looked at in isolation, because that benefits That makes it a sterile environment where you don't have the opportunity as a factual determination to look at her actions. I thought you were going to tell me what they are. Yes. We can figure out what the significance is. Yes, Your Honor. What are these things that you On the seventh and eighth complaint, her ignoring what the boss tells her to do, and what she affirmatively does is she discovers up in Prescott Valley that there are still having FLSA violations. She tells her boss that, who's told her you're not involved in this. On the 26th and the following business day, on May 31st, she's fired. On the sixth complaint, she challenges the CEO's designation of his own mother as a salaried employee, and she challenges her immediate supervisor, Anthony Albanese, on that FLSA determination, and that results in her getting, for the first time ever, a bad performance that she argues later is pretextual. You go to the first complaint where she is raising the issue to Matt Verbin, her immediate supervisor. She's told to back off. She then is told that she needs to rehabilitate it, but she doesn't do it. So I'm respectfully submitting to you, Judge Kuczynski, that if McKenzie's the standard, it's not Caston, it's not Lambert. If McKenzie's the standard, she has gone outside her role, and she's demonstrated the adversity it takes in order to do it. And if you look at most of the cases, Your Honor, under McKenzie, an entire class of HR employees, HR employees, is excluded from ever trying to comply with the FLSA. They're not subject to anti-retaliation. And I understand the courts have a... If we follow McKenzie, I'm not sure what the things you've listed, how that's different from what a conscientious manager would do. You know, she sees something's going on, she argues, she talks about it. I'm just saying, if McKenzie's the rule, how that steps outside of her role. Because she ignores her bosses who tell her on two separate occasions to back away, don't explore it, and she still does. That's outside her role. If the issue is, if I've got to go and put myself in a position of adversity, what better way of doing that than putting your job on the line and ignoring your immediate supervisor's boss, the same way as if you're a law clerk. You say, thou shall not research this, and they go do it. That is what that woman did. It's a big problem, law clerks researching too many things. Thank you very much.
judges: Benson, Kozinski, Graber